UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| ELEVATION OUTDOOR ADVERTISING, LLC, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No.:   3:22-CV-105-TAV-JEM |
| | ) |
| CITY OF PIGEON FORGE, TENNESSEE, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This civil action is before the Court on plaintiff's Motion for Partial Summary Judgment [Doc. 20] and Defendant City of Pigeon Forge's Motion for Summary Judgment [Doc. 26]. Because there is overlap between the issues raised in plaintiff and defendant's motions, the Court will consider both motions at the same time. The parties have filed their respective responses and replies to each motion [Docs. 21, 25, 41, 44]. Therefore, this matter is ripe for the Court's review. *See* E.D. Tenn. L.R. 7.1(a), 7.2. For the reasons explained below, plaintiff's motion [Doc. 20] will be **DENIED**, and defendant's motion [Doc. 26] will be **GRANTED**.

I.      **Background**

This case involves a dispute over plaintiff Elevation Outdoor Advertising, LLC ("Plaintiff")'s six sign permit applications that were submitted to and denied by defendant City of Pigeon Forge, Tennessee ("Defendant"). Prior to February 2021, the sign regulations located in defendant's Municipal Code (the "Billboard Code") along

with the sign regulations in defendant's Zoning Ordinance (the "Former Sign Regulations") governed sign permit applications submitted to defendant [Doc. 1, ¶ 13; Doc. 1-1; Doc. 1-2; Doc. 20, p. 3]. However, on February 23, 2021, the Sevier County Chancery Court declared § 14-405 of the Billboard Code invalid because the ordinance violated Tenn. Code Ann. § 13-7-201, *et seq.* and the First Amendment to the U.S. Constitution [Doc. 1-3; Doc. 20, p. 3]. *See Reagan v. City of Pigeon Forge*, No. 17-4-115 (Sevier Cnty. Chancery Ct. Feb. 23, 2021).

As a result of this decision, defendant passed Ordinance No. 1105 (the "Moratorium"), which took effect on March 8, 2021 [Doc. 1-4; Doc. 22-3, p. 1; Doc. 30, p. 4]. The Moratorium purported to bar the issuance of any permits for new signs between March 8, 2021, and May 7, 2021, "unless the moratorium is terminated at any earlier time by the City adopting a new ordinance addressing how signs shall be regulated within the City" [Doc. 1-4; Doc. 20, p. 4]. On the same day the Moratorium took effect, defendant passed on first reading Ordinance No. 1107 (the "New Sign Regulations"), which was to replace and remove certain sections from the Former Sign Regulations [Doc. 1-5; Doc. 22-3, p. 2; Doc. 30, p. 4].

On March 11, 2021, plaintiff submitted four sign permit applications to defendant [Doc. 20, p. 5; Doc. 30, p. 4]. On March 15, 2021, plaintiff amended its original four applications and submitted two additional applications [Doc. 20, p. 5; Doc. 30, p. 4]. On March 30, 2021, defendant held a work session continuing its consideration of the New Sign Regulations [Doc. 22-5; Doc. 30, p. 5]. On April 8, 2021, plaintiff emailed

defendant's Community Development Director David Taylor ("Taylor") to ask for an update on the permit applications it had submitted [Doc. 20, p. 5; Doc. 20-4, p. 4]. On April 12, 2021, defendant passed the New Sign Regulations, giving them an effective date of April 27, 2021 [Doc. 1-5; Doc. 20, p. 5; Doc. 22-6, p. 2; Doc. 30, p. 5].

On the same day the New Sign Regulations took effect, defendant held a meeting where it considered plaintiff's sign permit applications [Doc. 20, p. 5; Doc. 30, p. 5]. Defendant's Planning Commission denied plaintiff's sign permit applications because they did not comply with the size and height provisions of the New Sign Regulations [Doc. 22-7, p. 10; Doc. 30, p. 5]. On April 28, 2021, Taylor informed plaintiff of the status of its applications, stating that they had been denied by the Planning Commission because the proposed signs were not in compliance with defendant's sign ordinance [Doc. 20, p. 6; Doc. 20-4, p. 3]. Defendant sent plaintiff a series of letters dated May 2, 2021, stating that its sign permit applications had been denied under Sections 408.1.3 and 408.9.4.1 of the New Sign Regulations [Doc. 1-5, pp. 3, 15–16; Doc. 20-4, pp. 5–7; Doc. 30, p. 6].

Plaintiff's signs were subject to Section 408.9.4.1 of the New Sign Regulations because they were all to be located in C-6 zoning districts [Doc. 22, ¶ 15; Doc. 30, p. 6]. Signs located in a C-6 zoning district may not exceed 100 square feet in face size and may be no higher than 25 feet [Doc. 1-5, pp. 15–16; Doc. 22, ¶ 15]. LED or electronic faces cannot exceed 33 total square feet, and signs can be located no closer than 50 feet from another ground sign [Doc. 1-5, pp. 15–16; Doc. 22, ¶ 15]. Plaintiff's six proposed

3

signs were all 378 square feet and 50 feet high [Doc. 22, ¶ 15; Docs. 27-1, 27-2, 27-3, 27-4]. Each also had a proposed LED illuminated face, and five of the six were within a few hundred feet from one another [Doc. 27, ¶¶ 18, 21]. Due to similar size and height requirements applied to C-6 zoning districts, plaintiff's sign permit applications would have been denied under the Former Sign Regulations as well [Doc. 1-2, pp. 15–16; Doc. 27, ¶¶ 22–23].

The parties dispute which bodies of regulatory authority were used to evaluate plaintiff's sign permit applications. Plaintiff argues that along with the New Sign Regulations, the Former Sign Regulations, the Moratorium, and the Billboard Code all affected the processing and evaluation of its applications in some form or fashion [Doc. 41, pp. 6–7, 14–15]. On the other hand, defendant argues that the New Sign Regulations are the only relevant body of regulatory authority that applied to plaintiff's applications [Doc. 30, pp. 8–10; Doc. 44, pp. 1–5].

Plaintiff filed this action against defendant on March 22, 2022, alleging that defendant violated its free speech rights as guaranteed by the First Amendment to the U.S. Constitution and Article I, Section 19 of the Tennessee Constitution [Doc. 1, ¶¶ 61–70]. Plaintiff further alleges that defendant has failed to comply with the procedural protections of Tenn. Code Ann. § 13-7-201, *et seq.* and as a result, has denied plaintiff its procedural due process rights, as secured by the Fourteenth Amendment to the U.S. Constitution and Article I, Section 8 of the Tennessee Constitution [*Id.* at ¶¶ 71–78]. Plaintiff requests as relief "an order preliminarily and

4

permanently enjoining [defendant] from enforcing the Billboard Code, New Sign Regulations, and sign variance criteria" and "an order compelling [d]efendant to permit the applied-for signs" [*Id.* at p. 17]. In addition, plaintiff requests an award of damages pursuant to 42 U.S.C. § 1983 and legal fees and expenses pursuant to 42 U.S.C. § 1988 [*Id.*].

## II. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). As such, the moving party has the burden of conclusively showing the lack of any genuine issue of material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). To successfully oppose a motion for summary judgment, "[t]he non-moving party . . . must present sufficient evidence from which a jury could reasonably find for [it]." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 940 (6th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## III. Analysis

### A. Count I: Violation of Free Speech

This section will only address defendant's motion for summary judgment [Doc. 26], as plaintiff's motion for partial summary judgment makes no argument as to this claim [Doc. 20].

Defendant first argues that plaintiff lacks standing to assert a First Amendment argument because its sign permit applications were denied based on a failure to comply with content-neutral size and height restrictions [Doc. 30, p. 10]. Defendant contends that pursuant to § 408.9.4.1 of the New Sign Regulations, ground signs permitted in C-6 zoning districts must meet certain requirements [*Id.* at 11]. Defendant asserts that plaintiff's permit applications were denied due to a failure to comply with the regulations for height and size [*Id.* at 10]. Specifically, defendant maintains that each of the six signs plaintiff sought to construct were LED electronic signs that had 378 square feet of proposed advertising surface area and were to be 50 feet tall [*Id.* at 11]. Defendant explains that plaintiff's permit applications disregarded the size and height provisions of both the New and Former Sign Regulations and were denied without respect to the location of the signs or content of the speech [*Id.*].

Plaintiff first responds by arguing that defendant has failed to address several of its claims, and as a result, defendant's motion must be denied [Doc. 41, p. 6]. Plaintiff states that the only argument advanced by defendant that could be aimed at all its claims is defendant's assertion that plaintiff lacks standing [*Id.* at 7]. However, plaintiff contends that defendant's standing argument is contrary to established precedent from the Supreme Court and the Sixth Circuit [*Id.*]. Citing to various cases in support, plaintiff argues that defendant's ordinances are a prior restraint on speech that empowers defendant to exempt or favor speakers when compared to plaintiff and grant unlawful discretion to officials in deciding whether to permit speech [*Id.* at 9–10]. In support, plaintiff states that defendant

6

took 48 days to render a decision on its permit applications [*Id.* at 10].  It contends that

defendant's officials are not required to make prompt decisions, and neither the Former

Sign Regulations nor the Billboard Code contained any time limits on rendering a

decision on sign permit applications [*Id.* at 11].  Thus, plaintiff maintains that it has a

valid claim that defendant's regulations failed to require prompt decision making and the

entire regulatory scheme must be invalidated as a result [*Id.*].

Plaintiff next cites to several examples of unbridled discretion when it comes to

defendant's permitting decisions [*Id.* at 12–13].  Plaintiff contends that these examples

demonstrate that defendant routinely allowed signs with comparable size and height to

the ones requested by plaintiff and routinely waived these restrictions for preferred

speakers and signs with content deemed "on-premise" [*Id.* at 12–14; Docs. 41-2, 41-3,

41-4, 41-5, 41-6, 41-7, 41-8, 41-9].  It contends that Taylor's deposition testimony

explaining the differences between these signs and plaintiff's proposed signs is not

sufficient [Doc. 41, p. 13].  Finally, plaintiff asserts it has standing to argue that

defendant's sign ordinances are content based, citing to *KH Outdoor, LLC v. City of

Trussville*, 458 F.3d 1261 (11th Cir. 2006) and *City of Austin v. Reagan Nat'l Advert. of

Austin, LLC*, 142 S. Ct. 1464 (2022) [Doc. 41, pp. 15–16].  It argues that it suffered a

concrete and actual injury when its permits were denied, and this injury was caused by

defendant's application of the relevant ordinances [*Id.* at 16].

Defendant replies that plaintiff cannot manufacture standing to challenge various

other provisions of the sign ordinance that would not change the outcome [Doc. 44, p. 6].

7

Defendant also argues that *KH Outdoor* is not comparable to this case, as it dealt with standing to challenge size and location limitations that were tied to the content of the sign [*Id.* at 7]. Defendant further states that in this case, the size and height restrictions in § 408.9.4.1 apply to every sign in a C-6 zoning district, regardless of the content, and plaintiff does not argue this provision is content-based [*Id.*].[1] Instead, defendant contends that plaintiff asserts, but does not explain, how the other provisions of the sign ordinance that it challenges would change the outcome of its applications or would result in a concrete and actual injury [*Id.*].

Defendant further argues that plaintiff does not have standing under a prior restraint theory [*Id.*]. Defendant contends that plaintiff does not allege that it was actually injured by the supposed prior restraint, or that it refused to make an application because of the prior restraint [*Id.* at 8]. Instead, defendant states that plaintiff went through the permitting process and was denied on grounds it does not challenge [*Id.*]. Moreover, defendant contends that no matter how plaintiff couches its claim, it lacks standing because its permit applications would have been denied regardless [*Id.* at 8–9].

The Court first notes that there is much dispute in this case over what bodies of regulatory authority were used to evaluate plaintiff's sign permit applications. In the Complaint, plaintiff applies its free speech claim to five bodies of regulatory authority: the New Sign Regulations, the variance criteria of the Zoning Ordinance, the

---

[1] Defendant explains in a separate part of its brief that the examples provided by plaintiff where defendant routinely allowed signs with comparable size and height to the ones requested by plaintiff were for signs either located in different zoning districts than plaintiff's signs or were not comparable to plaintiff's signs for some other reason [Doc. 44, pp. 15–16; Doc. 44-1, pp. 47–63].

8

Moratorium, the Billboard Code, and the Former Sign Regulations [Doc. 1, ¶¶ 63–67]. The only body of authority that the parties do not dispute was used to evaluate plaintiff's sign permit applications is the New Sign Regulations [Doc. 30, p. 8].

The Court finds this case to be nearly indistinguishable from the Sixth Circuit's decision in *Outdoor One Commc'ns, LLC v. Charter Twp. of Canton*, No. 21-1323, 2021 WL 5974157 (6th Cir. Dec. 16, 2021). In *Outdoor*, a billboard company applied for sign permits, which were denied based on size and height restrictions of a local sign ordinance. *Id.* at *1. The sign company sued the city and challenged the sign ordinance, as applied and facially, on First Amendment grounds, arguing that it created an on-premises/off-premises distinction, gave officials the ability to exempt certain signs from the permit requirements, and was an unconstitutional prior restraint. *Id.* at *1–2.

The Sixth Circuit began its analysis by stating that the first hurdle to the plaintiff's claim was to establish standing. *Id.* at *2. The court stated that Article III standing requires the plaintiff to show he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (internal quotation marks omitted).

Here, the only injury the Court can discern from plaintiff's briefing and its Complaint is the fact that it wants to erect six signs, but it cannot do so due to defendant's denial of its permit applications. However, as in *Outdoor*, plaintiff is unable to demonstrate that its injury is fairly traceable to the challenged conduct of defendant or that its injury is redressable by a decision of this Court in its favor.

9

While noting the dispute about the applicable bodies of regulatory authority, the parties do not dispute that the New Sign Regulations were used to evaluate plaintiff's sign permit applications. Based on the evidence produced in the record, plaintiff's permit applications were subject to the C-6 zoning district and were denied based on Sections 408.1.3 and 408.9.4.1 of the New Sign Regulations [Doc. 20-4, pp. 5–7; Doc. 22, ¶ 15]. Section 408.9.4.1 states the requirements for a sign in the C-6 zoning district, including the size and height requirements [Doc. 1-5, pp. 15–16]. As demonstrated by the meeting minutes of the Planning Commission and Board of Zoning Appeals that took place on April 27, 2021, plaintiff's applications were denied because "the proposed signage [met] neither the old or new sign ordinance . . . due to non-compliance with sign regulations for height or size" [Doc. 22-7, p. 10]. Plaintiff was notified of this reason for the denial of its applications [Doc. 20-4, pp. 5–7].

However, plaintiff has not challenged the size and height requirements of defendant's ordinances. Instead, plaintiff argues that it has standing based off two challenges it has made to other provisions of defendant's ordinances. First, plaintiff challenges the amount of time it takes for defendant to process sign permit applications. Second, plaintiff challenges the amount of discretion given to defendant's officials when making a decision about a sign permit application.

Despite plaintiff's challenges to other parts of defendant's ordinances, "[w]hen unchallenged size restrictions independently bar erecting a sign, the plaintiff lacks standing to challenge other provisions of a sign ordinance." *Outdoor*, 2021 WL 5974157,

10

at *3.  This is because even in the absence of the regulations that plaintiff has challenged, and even if the Court invalidated them, plaintiff's injury would not be redressed "because the size and height restrictions still would preclude [defendant] from approving [its] sign applications and thus still would preclude plaintiff[] from erecting each of these signs." *Midwest Media Prop., L.L.C. v. Symmes Twp.*, 503 F.3d 456, 461–62 (6th Cir. 2007). For example, even if the provisions of defendant's ordinances imposing time limits on the decision-making process were held unconstitutional, plaintiff's signs would still be denied due to the provisions imposing size and height restrictions.  Moreover, plaintiff has not demonstrated that it intends to display signs that comply with the size and height requirements.  *See id.* at 464.  In fact, defendant informed plaintiff that if it corrected the size and height deficiencies, it could submit new applications [Doc. 20-4, pp. 5–7], but plaintiff has not alleged that it did so.[2]

Furthermore, plaintiff's argument that defendant's ordinances are prior restraints on protected expression is similarly unavailing.  Plaintiff has cited to *City of Lakewood v. Plain Dealer Publ'g Co.* for the proposition that "when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license."  486 U.S. 750, 755–56 (1988).  However,

---

[2]  In a separate part of its brief, plaintiff also challenges Section 408.1.3 of the New Sign Regulations [Doc. 41, p. 17].  Although this is one of the sections cited to by defendant for denying plaintiff's applications, the fact remains that plaintiff has not challenged the size and height requirements of Section 408.9.4.1, which independently barred plaintiff's signs.

11

in *Outdoor*, the Sixth Circuit specifically stated that pointing to *City of Lakewood* will not satisfy the requirement of standing. *Outdoor*, 2021 WL 5974157, at *4. Instead, "[t]o allege an injury for a prior restraint claim, . . . the plaintiff must show that there is speech [it's] likely to engage in that would require prior approval or otherwise be impeded under these provisions." *Id.* (internal quotation marks omitted).

Here, plaintiff has not demonstrated that "its speech was altered or deterred by any prior restraint or that it was otherwise impeded by those provisions of [defendant]'s ordinance." *Id.* For example, plaintiff has not shown how being required to wait 48 days on defendant's permitting decision affected its speech or otherwise injured plaintiff. "In fact, [plaintiff] went through the permitting process and was denied because its signs were too big. Nor has [plaintiff] alleged that it intends to construct other signs in the future and is, therefore, self-censoring." *Id.*[3]

The Court further notes that plaintiff has attempted to demonstrate the unbridled discretion of defendant's officials in their permitting decisions by providing multiple sign permit applications that were approved with similar size and height specifications as plaintiff's signs [Docs. 41-2, 41-3, 41-4, 41-5, 41-6, 41-7, 41-8, 41-9]. However, defendant produced the deposition testimony of Taylor, its Community Development

---

[3] Plaintiff relies on *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343 (6th Cir. 2007), for the proposition that the prior restraint of a licensing provision coupled with unbridled discretion itself amounts to an actual injury. However, like *Outdoor*, *Prime Media* stated that "the prospect of prior restraint *and resulting self-censorship* can itself constitute the required actual injury." *Prime Media*, 485 F.3d at 351 (emphasis added). Again, plaintiff has failed to demonstrate any resulting self-censorship and has also failed to address the Sixth Circuit's more recent decision on this issue: *Outdoor*, 2021 WL 5974157, at *4. Moreover, the Court notes that plaintiff's reliance on 11th Circuit authority is unpersuasive [*See* Doc. 41, pp. 10–11, 15].

Director, who explained how these signs differed from plaintiff's proposed signs, including the fact that some were located in different zoning districts than plaintiff's signs [Doc. 41-2, p. 5; Doc. 44, pp. 15–16; Doc. 44-1, pp. 47–63]. In addition, in no zoning district is a 50-foot sign permitted [Doc. 44, p. 5; Doc. 44-1, p. 21]. The permitting materials submitted by plaintiff demonstrate this fact, showing that the permitted signs were under 50 feet in total sign height [Doc. 41-3, p. 6; Doc. 41-4, p. 6; Doc. 41-5, p. 5; Doc. 41-6, p. 5; Doc. 41-7, p. 4; Doc. 41-8, p. 4]. As a result, no matter what district plaintiff's proposed signs were zoned for, its applications would have been denied [Docs. 27-1, 27-2, 27-3, 27-4]. *See Outdoor*, 2021 WL 5974157, at \*3 (rejecting the plaintiff's challenge to exemptions contained in the sign ordinance because no matter the category the plaintiff's sign fell under, it was still too big).

In conclusion, plaintiff does not have standing to assert a claim under the Free Speech Clause of the First Amendment because it has failed to demonstrate that its injury is fairly traceable to the challenged conduct of defendant. Even if this requirement was met, plaintiff would still lack standing because it has not shown that its injury is redressable in the face of size and height requirements, which plaintiff has not challenged, that would bar plaintiff's proposed signs regardless.

The Court reaches this conclusion as to all five bodies of authority that plaintiff has listed in its free speech claim of the Complaint. For each body of authority plaintiff has challenged, it must separately establish an injury in fact. *See Prime Media*, 485 F.3d

13

at 351. Again, the only injury the Court can discern from plaintiff's briefing and the Complaint is the fact that it wants to erect six signs, but it cannot do so due to defendant's denial of its permit applications. However, the parties do not dispute that the New Sign Regulations were used to evaluate plaintiff's permit applications, which were denied due to the size and height requirements [Doc. 1-5, pp. 15–16; Doc. 22-7, p. 10].

In addition, plaintiff has failed to separately establish an injury in fact as to each provision of the other bodies of regulatory authority that it cites. Even if denial of plaintiff's permit applications is the alleged injury in fact as to these other bodies of authority, plaintiff's injury would not be redressable because its sign permits would still be denied in the face of the size and height requirements of both the New and Former Sign Regulations, neither of which plaintiff has challenged [Doc. 1-2, pp. 15–16; Doc. 27, ¶¶ 22–23]. As a result, plaintiff lacks standing to bring its free speech claim as to any of these bodies of regulatory authority.

Plaintiff has also asserted its free speech claim under the Tennessee Constitution. However, as defendant has pointed out, "Tennessee does not recognize a private right of action for violations of the Tennessee Constitution." *Nance v. Kilpatrick*, No.: 1:18-CV-11, 2019 WL 1409847, at *14 (E.D. Tenn. Mar. 28, 2019) (citing *Cline v. Rogers*, 87 F.3d 176, 180 (6th Cir. 1996)).

Based on the foregoing, defendant's motion for summary judgment [Doc. 26] will be **GRANTED** as to Count I of plaintiff's Complaint.

14

**B. Count II: Violation of Due Process**

Plaintiff's motion for partial summary judgment [Doc. 20] is focused solely on its claim asserted in Count II of the Complaint, which is for a violation of due process. Defendant has raised the same arguments in its motion for summary judgment [Doc. 26] that it raised in response to plaintiff's motion. As a result, this section will address both the merits of plaintiff's motion [Doc. 20] and the merits of defendant's motion [Doc. 26] as it applies to Count II of the Complaint.

Before reaching the issue of whether defendant violated Tennessee law and thereby violated plaintiff's due process rights, defendant argues that alleged violations of state law cannot form the basis of a claim asserted under 42 U.S.C. § 1983 [Doc. 21, p. 7; Doc. 30, p. 27]. Defendant mainly relies on *Huron Valley Hosp., Inc. v. City of Pontiac*, 887 F.2d 710 (6th Cir. 1989) to argue that there can be no due process claim where a plaintiff relies on a state actor's alleged failure to comply with state law [Doc. 21, p. 8; Doc. 30, pp. 27–28]. Defendant contends that plaintiff has raised solely issues of state law regarding defendant's purported failure to comply with Tennessee zoning statutes, and as a result, plaintiff cannot invoke federal jurisdiction under the guise of procedural due process by alleging that defendant failed to comply with state regulations [Doc. 21, pp. 9–10; Doc. 30, p. 29].

Plaintiff responds that defendant's argument is contrary to the Sixth Circuit's reasoning in *Nasierowski Brothers Inv. Co. v. City of Sterling Heights*, 949 F.2d 890 (6th Cir. 1991), arguing that the Sixth Circuit has recognized a procedural due process

15

claim where the allegedly infirm process is an injury in itself [Doc. 25, p. 3; Doc. 41, pp. 19–20].  Plaintiff alleges that similar to *Nasierowski*, it has pled that the process followed by defendant when adopting the Moratorium and adopting the Billboard Code in place at the time it submitted its applications was infirm [Doc. 25, p. 3; Doc. 41, p. 20]. Plaintiff continues by stating that defendant has not disputed that it failed to comply with Tenn. Code Ann. §§ 13-7-203 and -204, and as a result, plaintiff has stated a valid procedural due process claim based on defendant's failure to comply with those state statutes [Doc. 25, p. 4; Doc. 41, pp. 20–21].

Defendant replies that *Nasierowski* dealt with a specific rezoning decision that appeared targeted at a property owner who had an ongoing dispute with the city, which is not comparable to the instant matter [Doc. 30, p. 29 n.7; Doc. 44, p. 18].  In addition, defendant contends that plaintiff has not rebutted any of the more recent authority it has cited to [Doc. 44, p. 18].  Moreover, defendant asserts that it had no reason to know that plaintiff intended to submit sign permit applications [Doc. 30, p. 29 n.7].  Defendant also argues that plaintiff was on constructive notice of the pending Moratorium Ordinance, given that notice was published by various means prior to the February 22, 2021, and March 8, 2021, meetings of the City Commission [*Id.*].

The Sixth Circuit has made clear that § 1983 is "limited to deprivations of *federal* statutory and constitutional rights."  *Huron Valley*, 887 F.2d at 714.  Following *Huron Valley*, the Sixth Circuit has dismissed § 1983 claims that are based solely on violations

16

of state law. *See Graham v. Chicowski*, No. 18-2049, 2019 WL 4381841, at \*5 (6th Cir. May 3, 2019); *Ohio ex rel. Faulkner v. City of Middletown*, 688 F. App'x 377, 380 (6th Cir. 2017); *Neinast v. Bd. of Trs.*, 346 F.3d 585, 597 (6th Cir. 2003).

Based on plaintiff's argument, plaintiff concedes that its due process claim brought pursuant to § 1983 is based solely on violations of Tennessee law [Doc. 25, p. 4; Doc. 41, pp. 20–21]. Plaintiff has made no argument that its § 1983 claim is based on violations of federal statutes or the U.S. Constitution. As a result, plaintiff's claim for violation of due process brought pursuant to § 1983 cannot stand. *See King v. Lawson*, No. 3:14–CV–500, 2015 WL 5089148, at \*3 (E.D. Tenn. Aug. 27, 2015).

In addition, plaintiff's reliance on *Nasierowski* is misplaced. First, defendant is correct that plaintiff has failed to address the more recent Sixth Circuit authority that decides whether a § 1983 claim can stand on violations of state law alone. In addition, the Court finds *Nasierowski* to be inapposite on the issue. *Nasierowski* did not address whether a § 1983 claim can stand on violations of state law alone. Instead, the language from *Nasierowski* upon which plaintiff relies was mentioned in the context of deciding when a procedural due process claim is cognizable in federal court, stating that "the allegedly infirm process is an injury in itself[.]" 949 F.2d at 894 (internal quotation marks omitted). However, this statement is inapposite to the ultimate issue in this case of whether plaintiff's § 1983 claim can stand on violations of state law alone.

Based on the foregoing, the Court finds that there is no genuine dispute of material fact as to plaintiff's due process claim brought pursuant to 42 U.S.C. § 1983, and

17

defendant is entitled to judgment as a matter of law.  Thus, plaintiff's motion [Doc. 20] will be **DENIED**, and defendant's motion [Doc. 26] will be **GRANTED** as to Count II of plaintiff's Complaint.

### C.    State Law Claims

Finally, there is a dispute between the parties regarding whether plaintiff has sufficiently pled in its Complaint a separate cause of action under Tennessee law, and if so, whether that separate cause of action is valid.  This argument was raised only in defendant's motion for summary judgment [Doc. 26], so this section will only address the merits of defendant's motion as to this issue.

The Court finds it unnecessary to undertake an analysis of whether plaintiff has sufficiently pled state law claims in its Complaint.  Instead, the Court agrees with defendant [Doc. 44, p. 22] that the Court has the discretion to decline to exercise supplemental jurisdiction over plaintiff's state law claims if all claims over which there was original jurisdiction have been dismissed.  *See Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009).  Because the Court has already granted defendant's motion [Doc. 26] as to all plaintiff's claims arising under federal law, it declines to exercise supplemental jurisdiction over any remaining state law claims.  *See Hoogland v. City of Maryville*, No. 3:19-CV-383, 2021 WL 3610459, at \*14 (E.D. Tenn. Aug. 13, 2021).  As a result, defendant's motion [Doc. 26] will be **GRANTED** as to any state law claims plaintiff may have raised in the Complaint.

## IV.     Conclusion

In conclusion, plaintiff's motion [Doc. 20] will be **DENIED**, defendant's motion [Doc. 26] will be **GRANTED**, and this case will be **DISMISSED**.  A separate order will follow.

ENTER:

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

19